**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MARVIN JOHNSON,**

   **Plaintiff,**

**v.**              **Case No.  8:14-cv-41-T-27TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

   **Defendant.**
_____/

## REPORT AND RECOMMENDATION

   The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further consideration.

A.

   Plaintiff applied for disability benefits in September 2010, alleging disability as of April 14, 2009, by reason of herniated discs, a torn labrum, tendonitis, prostate cancer, left hand tremors, suspected glaucoma, depression, insomnia, frequent nose bleeds, and arthritis

of the back, neck, right shoulder, right ankle, and both hands and wrists.[1]  Plaintiff's

application was denied originally and on reconsideration.

Thereafter, Plaintiff received a *de novo* hearing before an Administrative Law Judge

("ALJ").  Plaintiff was represented at the hearing by counsel and testified in his own behalf.

Additionally, a vocational expert was called by the ALJ**.**  Plaintiff was 52 years old at the time

of his administrative hearing on April 26, 2012.  He stands five feet six inches tall and

weighed 165 pounds.  He is single and lives by himself.  Plaintiff has a high school education.

Plaintiff reported past relevant work as assembler/machine operator.

In essence, Plaintiff testified that his physical difficulties began in 1995, when he

visited a chiropractor for lower back pain and nerves in his neck were injured during a

chiropractic procedure.  He continued to work until 2006.  Thereafter, in 2008 he underwent

surgery for prostate cancer.  He continues to receive follow-up check ups to monitor his PSA

level.  Since his prostate cancer surgery, he has had problems with bladder control and has to

urinate approximately once an hour.

---

[1]Plaintiff filed a previous application for benefits alleging disability beginning January 1, 2003.  The claim was denied initially, on reconsideration, and by an ALJ.  The Appeals Council remanded the claim for further development of Plaintiff's residual functional capacity and past relevant work.  By decision dated April 13, 2009, the ALJ found that Plaintiff retained the capacity to perform sedentary work which allowed him to alternate between sitting and standing every thirty minutes.  Relying on Plaintiff's testimony, vocational expert testimony, and citation to the *Dictionary of Occupational Titles*, the ALJ concluded at step four that Plaintiff could perform past work as an electronics assembler as actually performed. In the alternative, the ALJ concluded at step five that Plaintiff could perform other work existing in substantial numbers as identified by the VE.  (R. 54-63).  On this application, Plaintiff had different counsel and the ALJ and VE were different as well.

Plaintiff also testified regarding problems with his left shoulder, which developed approximately three months prior to the hearing and for which he takes anti-inflammatory drugs.  He testified that he takes hydrocodone, Baclofen, Robaxin, Soma, Temazepam, Ambien, nabumetone, Naproxen, and Tramadol.  He reported that the pain medications make him drowsy and in need of more sleep.  He lies down for about two hours per day, complains that he does not sleep well, and experiences bad moods from the pain.  In 2009, he could sit comfortably for one hour per day, stand comfortably for a half an hour, and walk comfortably for half a block.  Also in 2009, he was given a "cam walker" – a nylon boot he wears as much as possible for right ankle pain and instability.[2]  He testified that he wears orthotics in both shoes and has since 2003.  He claims that he has had difficulty stooping going back to 2009.  He also reported left hand tremors and shaking, which makes it difficult to grasp things, open jars, and causes him to drop things.  He stated that he could not lift a gallon of milk repetitively due to pain in both shoulders, left hand, and right wrist.  He complains that his neck pain causes him not to sleep well.  He wakes up frequently during his sleep and does not wake up until between noon and 2:00 p.m.  He prepares his own food, but does not perform household chores, socializes rarely, and has no hobbies.  He also has difficulty reading, remembering, concentrating, and focusing.  His short-term memory is also getting worse.  He claims such difficulties go back to 2009 but have increased since then.  In addition, he

---

[2]"CAM" stands for "Controlled Ankle Movement."  CAM Walker boots are foot braces that allow walking even when injured.  It allows minimal or no movement for the hinge of the ankle in order to rest/protect the injured area until the CAM Walker can be removed.  *See* http://www.alimed.com/cam-walker-boots/ (last visited Dec. 28, 2014).

experiences pain when driving due to his left leg and neck pain and stiffness.  As a result, he only drives short distances.  (R. 37-49).

Carl Schulz, the VE, presented brief, limited testimony.  He testified on a hypothetical assuming a person of Plaintiff's age, education, and work experience who would be limited to performing sedentary work and had the levels of pain and fatigue to which Plaintiff testified.  The VE opined that taking into consideration Plaintiff's pain, need to lie down two hours a day, and bladder control problems, such person could not perform substantial gainful activity.  Neither the ALJ nor Plaintiff's counsel elicited further testimony from the VE.  (R. 49).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed herein as necessary.  Pertinent to decision is Plaintiff's date last insured of December 31, 2009.

By his decision of June 21, 2012, the ALJ found that while Plaintiff has severe impairments related to degenerative disc disease and residuals of prostate cancer, he nonetheless had the residual functional capacity to perform light work with occasional postural limitations during the period from his alleged onset date of April 14, 2009, through his date last insured of December 31, 2009.  Upon this finding, the ALJ concluded at step four that Plaintiff could perform his past work as an assembler/machine operator as generally performed in the national economy.  In the alternative, the ALJ concluded at step five that the postural limitations had little or no effect on the occupational base of unskilled light work,[3]

---

[3]The ALJ cited Social Security Rulings 83-12 and 83-14 in support of his finding that the addition of occasional postural limitations to a light residual functional capacity would not

and thus a finding of not disabled was appropriate under grid rules 202.21 and 202.14.  Upon

these conclusions, Plaintiff was determined to be not disabled.  (R. 20-27).  The Appeals

Council denied Plaintiff's request for review (R. 1-6), and the ALJ's decision became the

final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits requires the claimant establish that

he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last

for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A

"physical or mental impairment," under the terms of the Act, is one that "results from

anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  *See

id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th

Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

demonstrate that she has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Moore

v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

---

significantly erode the occupational base.  (R. 26)

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

The ALJ, in part via an alternative finding, decided Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.*  These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* at Part 404, Subpart P, Appendix 2.  If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* at § 404.1569.  If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* at § 404.1569a.

6

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises nine claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Non-Recognition of All Impairments;

(2)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Failure to Give Weight to All Physicians' Opinions, Particularly Treating Doctors;

(3)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Hypothet that was Not Used Mandates Disability;

(4)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Failure to Properly Utilize 11th Circuit Pain Standard;

(5)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Failure to Utilize SSR 96-8p with Regard to RFC;

(6)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Lack of Substantial Evidence to Support ALJ Decision;

(7)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Listing Met;

(8)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Grids Met; and

(9)     Remand and Reversal Demanded With an Immediate Award of Benefits -- Improper Treatment of Lay Testimony.

(Doc. 10).

7

Plaintiff's challenges to the ALJ's finding on past relevant work and utilization of the grids for decision are addressed first because they have merit and support a remand. Plaintiff's remaining claims are unpersuasive but are addressed thereafter in the event the district court should disagree with the recommendation that the case should be reversed and remanded for further consideration.

*Step four: Past Relevant Work*

By his sixth claim, Plaintiff argues that the ALJ erred by failing to elicit testimony from the VE regarding his past relevant work as an assembler/machine operator.  Although the ALJ provided a record cite in support of his finding, Plaintiff notes that it contains a finding that he could not perform past work as actually performed.  He also notes there is no record development of the duties of his past work and thus is it impossible to determine whether he could perform such work in the national economy.  As such, Plaintiff urges substantial evidence does not support the ALJ's determination that Plaintiff could perform his past work as performed in the national economy.[4]  (Doc. 10 at 8-9).

In response, the Commissioner concedes the ALJ did not rely on the VE's testimony but notes that the Dictionary of Occupational Titles ("DOT") classifies Plaintiff's past work as an electronics assembler as light work.  In any event, the Commissioner notes that the ALJ made an alternative finding that Plaintiff was not disabled upon application of the grids. (Doc. 15 at 17-19).

---

[4]Part of this claim challenges the ALJ's step five finding.  That argument is addressed next.

At step four, the ALJ also must determine whether the claimant is capable of performing his past relevant work.  The review at this step involves the assessment of a claimant's residual functional capacity and requires consideration of the physical and mental demands of his former work.  In this regard, "the ALJ has the duty to *fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant h[im]self is capable of doing before [the ALJ] determines that []he is able to perform h[is] past relevant work."  *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (emphasis in the original); *see also Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986).  However, at this step, the burden is still upon the claimant to prove that he cannot do this past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986)).

A determination that a claimant can perform his past relevant work, and thus is not disabled, is appropriate where the claimant retains residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  Social Security Ruling ("SSR") 82-62, 1982 WL 31386, *3;[5] SSR 82-61, 1982 WL 31387, * 2.  Where it is determined that a claimant can perform his past job as he performed it, the claimant's statements regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.  SSR 82-63 at *3;

---

[5]SSRs are binding on all aspects of the Social Security Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sep. 1981).

*see also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be sufficient to furnish information about past work).  And, where it is determined that a claimant can perform a past job as it is usually performed in the national economy, an ALJ may rely upon job descriptions set forth in the DOT.  *See* SSR 82-61 at * 2.  While the claimant bears the burden at this step of demonstrating an inability to return to his past relevant work, the ALJ has a concomitant duty to develop a full record in this regard.  *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990) (citing *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987); *Nelms*, 803 F.2d at 1165)).

In this case, the ALJ found at step four that, through his date last insured of December 31, 2009, Plaintiff retained the residual functional capacity ("RFC") to perform light work except that he was able to only occasionally crouch, stoop, balance, crawl, kneel, climb ladders, ropes, scaffolds, ramps, and stairs.  (R. 23).  Given that RFC, the ALJ determined that Plaintiff could perform his past work as an assembler/machine operator as the work is performed generally in the national economy.  Specifically, the ALJ stated that:

> The claimant has past relevant work as an assembler/machine operator (Ex. B4E, B5D).  In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as generally performed.  There is no evidence that the claimant was unable to perform this job as usually performed in the national economy (Ex. B13E).

(R. 25-26).

On thorough review of the administrative record, I am constrained to conclude that the ALJ failed to adequately develop the demands of Plaintiff's past work and substantial

evidence does not support his finding that Plaintiff could perform past relevant work as an

"assembler/machine operator" as performed generally in the national economy.  At the outset,

it is unclear whether that job is one job or two separate jobs.  In any event, the ALJ wholly

failed to develop the particulars of Plaintiff's past relevant work as an "assembler/machine

operator" at the administrative hearing.  Neither the ALJ nor Plaintiff's counsel asked

Plaintiff or the VE about the physical and mental demands of Plaintiff's past work.  The only

testimony about past work was the following:

> ALJ:    Okay.  I don't think I have any follow-up questions so I'll speak with
> our vocational expert at this point of the hearing.  He did furnish us
> with a work history report.  Have you had a chance to review that?
>
> Atty:    I have, Your Honor.
>
> ALJ:    Any objection to that?
>
> Atty:    I have no objection, Your Honor.
>
> ALJ:    Okay.  I'll mark that with the appropriate exhibit number after the
> hearing and I'll admit that also into evidence at this time.
>
> ALJ:    Mr. Schulz, any changes needed with respect to the work history in
> view of the testimony?
>
> VE:    No, sir.

(R. 48-49).  That testimony only adds to the confusion.  The VE's work history report is not

identified in the index to the administrative record, the ALJ does not cite it in his decision,

and I have been unable to find it on review.  Further, because there is no testimony about

Plaintiff's work, the quoted exchange between the ALJ and the VE also muddies the water.

In sum, the demands of Plaintiff's past work were not developed and thus it was not possible

to compare the same to Plaintiff's RFC.  While Plaintiff still bears the burden of proof at this

step of the evaluation, I find that the ALJ erred by failing fully investigate and make explicit findings as to the physical and mental demands of Plaintiff's past work.

Although the ALJ cited certain exhibits in support of his past relevant work finding, the citations provide no support for the conclusion that Plaintiff could perform his past work as generally performed. Thus, Exhibit B4E is a work history report Plaintiff completed in connection with his application for benefits. Therein, Plaintiff reported two past jobs, both of which he titled as "assembler/machine operator" in a "manufacturing" type of business.[6] (R. 160). While this report would support the conclusion that Plaintiff could not perform his past work as actually performed (the jobs required frequently lifting more than 50 pounds, which would exceed the lifting requirements for light exertional work (R. 162)), it does not speak to the matter of how such work is generally performed. The ALJ's citation to Exhibit B5D, a summary of earnings, and Exhibit B13E, an administrative finding that Plaintiff could not do his past work, add nothing.[7]

In the circumstances, the ALJ was required to identify the vocational evidence on which he relied. This is typically done by reference to an acceptable vocational source such

---

[6]As described by Plaintiff, the jobs had identical duties and required that he frequently lift 50 pounds, walk and stand two hours each in an 8-hour day, and sit for four hours in an 8-hour day. (R. 161-62). It appears that both jobs were with the same company. (R. 167).

[7] Exhibit B5E is a summary of FICA earnings for certain years. It does not speak to the duties of Plaintiff's past work. The reference to Exhibit B13E is the most baffling. That exhibit was completed by an SSA adjudicator on February 9, 2011, and used in connection with the denial of Plaintiff's claim on reconsideration. Therein, the adjudicator found that Plaintiff could not perform his past relevant work as actually performed but could perform other jobs such as sorter, stuffer, and addresser. (R. 205-08). The adjudicator did not address whether or not Plaintiff could perform past work as an assembler/machine operator as generally performed in the national economy.

as the Dictionary of Occupational Titles ("DOT") and the DOT job numbers corresponding to Plaintiff's past work, not to a claimant's self-reported work history.  Here, the decision reflects nothing in support of the conclusion.[8]  Thus, while the ALJ might have cited the DOT or other record support for his finding, he did not and thus I cannot conclude his finding is supported by substantial evidence.[9]  *See Dial v. Comm'r of Soc. Sec.*, 403 F. App'x 420 (11th Cir. 2010).

### *Step five: Utilization of the Grids for Determination and VE testimony*

Also within his sixth claim, Plaintiff summarily challenges the ALJ's alternative finding at step five, asserting that the ALJ should not have used the grids for decision at this step because he had nonexertional limitations.  (Doc. 10 at 9).

The Commissioner counters that it was appropriate for the ALJ to rely upon the grids because although Plaintiff had occasional postural limitations, such limitations do not significantly erode the occupational base for light work.  In support, the Commissioner cites *Gerig v. Astrue*, No. 5:08-cv-453-Oc-18GRF, 2010 WL 3730904, at *1, 3-4 (M.D. Fla. Sept. 22, 2010); *Sherman v. Astrue*, No. 2:09–c-319-FtM-29SPC, 2009 WL 1841604, at *4, 7-9

---

[8]Although not argued, I note that while the prior ALJ obtained VE testimony on Plaintiff's past work and identified corresponding DOT numbers (R. 61), the current ALJ did not rely upon such in his decision.  An ALJ may consider and rely on evidence from prior hearings, including that of vocational expert testimony.  *See Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) (holding that ALJ's reliance on VE's testimony from two prior hearings was "appropriate"); *see also,* 20 C.F.R. § 404.900(b).  Here, that was not done.

[9]However, to the extent Plaintiff suggests the ALJ was required to elicit VE testimony at step four since a VE was present at the hearing (Doc. 10 at 8), I disagree.  Indeed, VE testimony is not required at step four.  While the ALJ's brief inquiry of the VE is inexplicable, Plaintiff proffers no authority or persuasive argument dictating that the ALJ erred by not taking testimony from the VE at this step.

(M.D. Fla. June 26, 2009); *Heatly v. Astrue*, No. 5:08-cv-33-Oc-GRJ, 2009 WL 764156, at

*5, 8 (M.D. Fla. Mar. 19, 2009).  (Doc. 15 at 17-19).

At step five, the burden of proof shifts to the Commissioner to prove that the

claimant is capable of performing other work available in the national economy, considering

the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278

(citation omitted); 20 C.F.R. § 1520(a)(4)(v).  This burden may be met through

straightforward application of the grids[10] or through the testimony of a vocational expert.[11]

*Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  This case presents the recurring

issue of whether the ALJ may rely exclusively on the grids for decision, or whether a

vocational expert is required.  The decision in *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995),

is instructive on the law:

> Once the finding is made that a claimant cannot return to
> prior work the burden of proof shifts to the [Commissioner]
> to show other work the claimant can do.  The
> [Commissioner] bears the burden of establishing that [the
> claimant], who could not perform her past work, could
> perform alternative work in the national economy.  Although
> this burden can sometimes be met through straightforward

---

[10]The grids are contained within the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and may allow claimants to qualify for disability benefits when their impairments do not meet or equal the listed qualifying impairments.  *Phillips*, 357 F.3d at 1240.  An ALJ may use the grids to apply the claimant's background to factors such as RFC, age, education, past work experience, and fluency in English.  *Id.*  The grids direct a statutorily-required finding of "disabled" or "not disabled" accordingly.  *Id.*

[11]The other means by which the ALJ may make the step-five determination is by use of a VE.  *Phillips*, 357 F.3d at 1240.  A VE provides expertise regarding the kinds of jobs that are within an individual's functional capacity.  *Id.*  The ALJ will pose hypothetical questions to the VE to determine whether someone with the claimant's previously determined limitations will be able to secure employment in the national economy.  *Id.*

> application of the Medical-Vocational Guidelines (the
> "grids"), the regulations regarding the implementation of the
> grids caution that they are only applicable under certain
> conditions.  For example, the claimant must suffer primarily
> from an exertional impairment, without significant
> non-exertional factors.  Exclusive reliance on the grids is
> appropriate in cases involving only exertional impairments
> (impairments which place limits on an individual's ability to
> meet job strength requirements).  Pain is a nonexertional
> impairment.  Exclusive reliance on the grids is inappropriate
> when a claimant has a nonexertional impairment that
> significantly limits the claimant's basic work activities.  If
> the grids are inapplicable, the [Commissioner] must seek
> expert vocational testimony.

*Id.* at 1559 (citations omitted).

In *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992), the court further addressed

the interplay between the grids and nonexertional impairments.  There, the ALJ found the

claimant suffered certain nonexertional impairments including seizure disorder, peptic ulcer

disease, and an affective disorder; however, he determined the plaintiff could do a full range

of light work and no vocational expert was necessary.  In rejecting this conclusion and the

ALJ's reliance on the grids, the Eleventh Circuit stated, "it is only when the claimant can

clearly do *unlimited* types of light work, . . . that it is unnecessary to call a vocational expert

to establish whether the claimant can perform work which exists in the national economy."

*Id.* at 839 (quotations omitted).  The court concluded that upon the ALJ's findings that the

plaintiff suffered nonexertional impairments, "it is evident that claimant was not able to do

*unlimited* types of light work, because he was precluded from work around unprotected

heights and dangerous moving machinery."  *Id*. (emphasis in original).  Accordingly, expert

testimony was required to determine whether the claimant's limitations were severe enough to

preclude him from performing a wide range of light work.  *Id.*; *see also Phillips*, 357 F.3d at 1242.

Subsequent to its decision in *Marbury,* the Eleventh Circuit again addressed the analysis required when determining whether the grids may be utilized for decision:  "[t]he general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform.  However, "[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."  *Phillips*, 357 F.3d at 1242 (quotation and citations omitted).  If either condition exists, an ALJ is required to obtain VE testimony.  *Id.*

The Court in *Phillips* explained that the first condition requires an ALJ to consult a VE when the claimant's *exertional* limitations[12] prevent the claimant from performing a full range of employment, which the Eleventh Circuit defines "as being able to do 'unlimited' types of work at the given exertional level."  *Id.*  Thus, in a given case, if the ALJ finds that a claimant cannot perform a full range or unlimited types of work at a particular exertional level, the ALJ is required to consult a VE to determine whether there were sufficient jobs at that exertional level within the national economy.  However, if the ALJ finds that a claimant can perform a full range or unlimited types of work at a given exertional level, the ALJ next

---

[12]Exertional limitations are those that affect an individual's ability to meet the seven strength demands of the job:  sitting, standing, walking, lifting, carrying, pushing, and pulling. *Phillips*, 357 F.3d at 1242 n.11 (citing SSR 96-4p).

16

determines to what extent the claimant's nonexertional limitations affect his/her ability to secure employment in the national economy.[13]  When considering whether a claimant's nonexertional limitations affect his ability to perform work in the national economy, the ALJ must determine whether the claimant's nonexertional impairments significantly limit his basic work skills.  *Phillips*, 357 F.3d at 1243 (citations omitted).  The phrase "significantly limit basic work skills" is interpreted as limitations that prohibit a claimant from performing "a wide range" of work at a given work level.  *Id.* (citations omitted).  If the ALJ determines that the claimant's nonexertional limitations do not significantly limit him from performing "a wide range" of work at a given work level, then the ALJ may rely on the grids to determine if the claimant is disabled.  Such finding is reviewed for substantial evidence.  If the ALJ determines otherwise, the ALJ then must consult a VE.  *Id.*

Here, the ALJ found that considering RFC, age, education and work experience in conjunction with the grids, Plaintiff would be able to perform other jobs existing in the national economy.  (R. 26).  Specifically, the ALJ found:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the additional limitations had little or no effect on the occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework

---

[13]Nonexertional limitations are those that affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands.  *Phillips*, 357 F.3d at 1242 n.11 (citing SSR 96-4p).  Postural limitations such as those at issue here are considered nonexertional limitations.

> of these rules.  Based on SSRs 83-12 and 83-14, the addition
> of occasional postural limitations to a light residual
> functional capacity would not significantly erode the
> occupational base.

(R. 26).

By the ALJ's RFC assessment, Plaintiff had the functional capacity to perform light

work as defined in 20 C.F.R. § 404.1567(b).[14]  (R. 23).  As I understand the ALJ's finding at

step five, Plaintiff's RFC allowed for something less than the full range of light exertional

work based on his occasional postural limitations.  However, while Plaintiff had

nonexertional limitations, i.e., that he was able to only occasionally crouch, stoop, balance,

crawl, kneel, and climb ladders, ropes, scaffolds, ramps, and stairs (R. 23), the limitations

"had little or no effect on the occupational base of unskilled light work."  (R. 26).  In support,

the ALJ cited Social Security Rulings 83-12 and 83-14 for the proposition that occasional

postural limitations such as he found Plaintiff to have would not significantly erode the

occupational base of unskilled light work.[15]  (R. 26).  Consequently, the ALJ determined that

---

[14]Light work is defined as work that involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10 pounds.  A job in this category
may require a good deal of walking or standing, or sitting most of the time with some pushing
and pulling of arm or leg controls.  To be considered capable of performing a full or wide
range of light work, the claimant must have the ability to do substantially all of these
activities.  20 C.F.R. § 404.1567(b).

[15]Social Security Ruling 83-12, which is captioned "Capability to do Other Work - -
The Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within
a Range of Work or Between Ranges of Work," states:

> Where an individual's exertional RFC does not coincide with the definition of
> any one of the ranges of work as defined in sections 404.1567 and 416.967 of
> the regulations, the occupational base is affected and may or may not represent
> a significant number of jobs in terms of the rules directing a conclusion as to

it was appropriate to utilize the grids for decision and, pursuant to grid rules 202.21 and

202.14, a finding of not disabled was warranted.  (R. 26).

 With some reluctance, I conclude that the ALJ erred by failing to elicit the testimony

of a VE to determine whether and to what extent Plaintiff's nonexertional limitations limited

his performing "a wide range" of work at the light exertional level and thus his ability to

secure employment at the light exertional level in the national economy.  *See Marbury*, 957

F.2d at 839; *Phillips*, 357 F.3d at 1242.  The Eleventh Circuit has routinely held that reliance

on the grids for determination was improper where a claimant has certain nonexertional

limitations.  *See Marbury*, 957 F.2d at 839 (work around unprotected heights and dangerous

moving machinery); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (pain and

---

disability.  The adjudicator will consider the extent of any erosion of the
occupational base and access its significance.  In some instances, the
restriction will be so slight that it would clearly have little effect on the
occupational base.  In cases of considerably greater restriction(s), the
occupational base will obviously be affected.  In still other instances, the
restrictions of the occupational base will be less obvious.  Where the extent of
erosion of the occupational base is not clear, the adjudicator will need to
consult a vocational resource.  The publications listed in sections 404.1566 and
416.966 of the regulations will be sufficient for relatively simple issues.  In
more complex cases, a person or persons with specialized knowledge would be
helpful.

SSR 83-12, 1983 WL 31253, at *2.

 Social Security Ruling 83-14, which is captioned "Capability to do Other Work - -
The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional
and Nonexertional Impairments," prescribes that the inability to crouch or to climb ladders or
scaffolding would not significantly affect the occupational base for light work.  SSR 83-14,
1983 WL 31254, at *2, 5.  It also reflects the same conclusion for a restriction to only
occasional stooping, and states that the inability to crawl or climb ropes would have "very
little or no effect on the unskilled light occupational base."  *Id.*

19

dizziness); *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988) (climbing, balancing, working at heights or around dangerous machinery); *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988) (sitting and standing); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987) (postural and manipulative limitations); *Patterson v. Bowen*, 799 F.2d 1455, 1459 (11th Cir. 1986) (limited grip strength and dexterity)*; Gibson v. Heckler*, 762 F.2d 1516, 1521 (11th Cir. 1985) (prolonged standing or walking, repetitive bending, and use of assistive device); *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (depression).  I conclude that consistent with these cases, the ALJ was obliged to take VE testimony to identify jobs available in the national economy.

While the ALJ attests that he only used the grids as a framework for decision, in reality he relied exclusively on them based on the guidance of the SSRs.  Regarding the ALJ's citation to SSRs, while the rulings suggest no VE testimony is necessary in the circumstances,[16] the Eleventh Circuit appears not to have specifically addressed this approach and whether exclusive reliance on the grids for decision at step five is appropriate where a claimant retains the functional capacity to perform light exertional work with only occasional postural limitations.  It appears that the majority of district courts addressing this particular issue, including several in this circuit, have concluded that exclusive reliance on the grids is appropriate where a claimant is limited to light exertional work and occasional postural limitations because the ability to perform occasional postural limitations does not

---

[16]The SSRs, however, do not specifically address the import of an occasional limitation on balancing or the impact all postural limitations have on the ability to perform light work.

significantly limit a claimant's basic work skills at the light exertional level.[17]  *See Virgin v. Astrue*, No. 6:11-cv-1165-Orl-DNF, 2012 WL 3601905, at *17-18 (M.D. Fla. Aug. 21, 2012); *Sherman*, 2009 WL 1841604 at *4, 7-9; *Heatly*, 2009 WL 764156 at *5, 8; *Keeling v. Colvin*, No. CIV-13-498-M, 2014 WL 4388411, at *9-10 (W.D. Okla. Sept. 5, 2014) (collecting cases addressing whether ALJ may rely exclusively on grids for decision if claimant is restricted to light work with postural limitations and concluding that prevailing view is that Commissioner's statements in SSR 83-14 and SSR 85-15 permit application of grids upon proper analysis by ALJ when the nonexertional limitations are purely postural).

However, one judge in this Court has found that use of grids is improper where claimant is limited to light work with frequent/occasional postural limitations and SSRs 83-14 and 83-15 do not compel a different result given decisions in *Marbury* and *Allen.  See Blake v. Colvin*, No. 8:12-cv-2736-T-TGW, 2014 WL 109113, at * 3-4 (M.D. Fla. Jan. 10, 2014); *Del Syens v. Astrue*, No. 8:11-cv-1040-T-23TGW, 2012 WL 4865186, at *4 (M.D. Fla. Sept. 18, 2012) (same).  I think this conclusion is correct under governing Eleventh Circuit authority.

While I think it improbable that a remand will give rise to a different result, I find that the ALJ erred in not asking the VE questions directed to the RFC actually assessed.  For

---

[17]Most of the courts cite to SSR 83-14 and SSR 85-15.  Social Security Ruling 85-15, captioned "Capability to do Other Work - - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," states that a restriction to only occasional stooping or crouching would leave the "light occupational base . . . virtually intact."  SSR 85-15, 1985 WL 56857, at *7.  It also states that a restriction on crawling or kneeling "would be of little significance in the broad world of work," and that, "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work."  *Id.* at *6.

this reason, the case should be remanded for further consideration consistent with the applicable standard in this circuit.

By my consideration, the balance of the claims lack merit.  The following discussion on Plaintiff's other claims is set forth should the Court reach a contrary conclusion from that reached above on the step four or step five decision.

### *Step Two:  Severity of Impairment and Impairments in Combination*

By his first claim, Plaintiff argues that the ALJ only recognized two severe impairments, i.e., residuals of prostate cancer and degenerative disc disease.  While the ALJ mentions back pain, chronic neck pain, cervical spondylosis and cervical displaced disc at C6-7, left hand and ankle pain, and prostate cancer with surgery, Plaintiff faults the ALJ for not treating them as severe impairments as well.  Additionally, because the ALJ did not consider such impairments severe, the ALJ failed to consider the combined effect of all impairments.  In light of these errors, Plaintiff urges reversal is warranted.  (Doc. 10 at 1-2).

The Commissioner counters that Plaintiff's argument is without merit because the ALJ found severe impairments at step two and proceeded throughout the sequential evaluation.  Thus, pursuant to *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) and more recent unpublished Eleventh Circuit cases, the Commissioner maintains no error occurred at this step.  In any event, the Commissioner contends that the ALJ's finding of degenerative disc disease necessarily encompassed Plaintiff's cervical spine impairments and back and neck pain.  In sum, the Commissioner urges the decision reflects that the ALJ properly considered the limiting effects of all of Plaintiff's impairments, whether or not severe, and in combination.  (Doc. 15 at 5-6).

22

At step two, the ALJ is called upon to determine whether a claimant's impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  In application, this inquiry is a "threshold" inquiry.  It allows only claims based on the slightest abnormality to be rejected.  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  An impairment is not severe only if it does not significantly limit a claimant's physical or mental ability to do basic work activities.[18]  *See* 20 C.F.R. § 404.1521(a).  Thus, the severity of a medically ascertained impairment is measured in terms of its effect upon a claimant's ability to work and not simply in terms of "a deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The Act and pertinent case law also require that the ALJ consider the combined effect of all a claimant's impairments.  42 U.S.C. § 423(d)(2)(B); *Wilson*, 284 F.3d at 1224.

Plaintiff's argument that the ALJ erred at step two is without merit.  The ALJ's finding that Plaintiff suffered the severe impairments of degenerative disc disease and residuals of prostate cancer satisfies the inquiry at this step.  *See Jamison,* 814 F.2d at 588 (noting that, ". . .  the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step

---

[18]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).  Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment.  *Id.*

two.”); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x. 823, 824-25 (11th Cir. 2010) (providing

that, “[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment,

the error was harmless because the ALJ concluded that [claimant] had a severe impairment:

and that finding is all that step two requires.”).

      The ALJ also considered the combined effect of Plaintiff's impairments.

Specifically, the ALJ stated that Plaintiff's impairments “were severe, in combination if not

singly,” he “considered all of [Plaintiff's] impairments individually and in combination but

[could] find no evidence that the combined clinical findings from such impairments reach the

level of severity contemplated in the listings,” and he considered the medically determinable

impairments which could reasonably be expected to cause Plaintiff's alleged symptoms.  (R.

23-24).  Such statements more than adequately evidence adequate consideration of the

combined effect of Plaintiff's impairments.  *See Wilson*, 284 F.3d at 1224-25 (citing *Jones v.

Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).

      <u>*Treating Physicians Charles A. Finn, M.D., and Kenneth R. Bryant, M.D.*</u>

      By his second claim, Plaintiff faults the ALJ for not mentioning his treating

orthopedic surgeon, Charles A. Finn, M.D., and treating urologist, Kenneth R. Bryant, M.D.

While the ALJ refers to certain offices, he does not acknowledge that Dr. Bryant treated

Plaintiff for prostate cancer or that Dr. Finn treated Plaintiff's back and ankle pain.  Citing

*Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987), Plaintiff urges that, at a minimum, the

case must be reversed because the ALJ failed to state with particularity the weight given the

medical opinions of record.  According to Plaintiff, the import of Dr. Bryant's opinion is that

the doctor continued to diagnosis prostate cancer and impotence organic even after Plaintiff's

prostate removal surgery in 2008, and the import of Dr. Finn's opinion is that he ordered an MRI in October 2007 that showed spondylosis and stenosis; he ordered an MRI of the ankle in 2009 which showed posterior tibial tendonitis and ganglion cysts and he diagnosed instability of Plaintiff's right ankle with tenderness; and he ordered a CAM boot during the pertinent period which undercuts the ability to perform light exertional work.  Because the ALJ did not properly refute these opinions, Plaintiff urges their opinions must be taken as true.  (Doc. 10 at 2-5).

The Commissioner concedes that the ALJ did not expressly refer to these doctors by name but urges the ALJ addressed their diagnoses, clinical findings, and course of treatment by reference to their respective clinics or practices (Advanced Orthopaedic Associates, P.A., for Dr. Finn, and Suncoast Medical Clinic for Dr. Bryant).  The Commissioner contends that neither doctor offered a medical opinion as such is defined in the regulations, and thus there were no medical opinions for the ALJ to weigh.  (Doc. 15 at 9-10).

"Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Id.*

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the

contrary.  *Winschel*, 631 F.3d at 178 (citing *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir.

1997)).  Good cause for rejecting a treating source's opinion may be found where the treating

sources's opinion was not bolstered by the evidence, the evidence supported a contrary

finding, or the treating source's opinion was conclusory or inconsistent with his or her own

medical record.  *Id.* (citing *Phillips*, 357 F.3d at 1240-41).

Upon consideration of the decision and review of the medical record, I conclude that

Plaintiff is not entitled to relief on this claim because to do so would be to elevate form over

substance.  While Plaintiff is correct that the ALJ does not mention Drs. Finn or Bryant by

name, the decision reflects a full consideration of their records before, after, and during the

pertinent period.  (R. 24-25).  The ALJ fully and fairly addressed Dr. Bryant's records

pertaining to Plaintiff's prostatectomy and subsequent follow-up treatment notes.  (R. 24).  By

my review, the ALJ's discussion of the doctor's records, whether by name or not, represents

an accurate portrayal of his treatment of Plaintiff during the pertinent period and thereafter.

*See, e.g.* (R. 321-22, 432-33, 438-39, 533-34).  While Plaintiff is correct that Dr. Bryant

continued to report an impression of prostate cancer, as recognized by the ALJ the treatment

notes dispel Plaintiff's suggestion that the same indicated a worsening of the condition given

Dr. Bryant's notations that there was no induration suggestive of recurrent local disease, no

rise in PSA levels suggestive of further disease, and no additional treatment (including

hormonal).  As for impotence, Dr. Bryant's records reveal that resolved with medication and

Plaintiff does not allege it impacted his ability to work.  As for Dr. Finn, the ALJ adequately

recounted Plaintiff's prior history of back pain, chronic neck pain, cervical spondylosis, and

cervical displacement at C5-6, as well as Plaintiff's orthopedic problems documented during

the relevant period including ankle instability/tenderness, MRI evidence of tibial tendinitis and ganglion cyst, and use of a CAM walker.  (R. 24-25).  Contrary to Plaintiff's assertions, I do not read the decision as rejecting any of Dr. Finn's opinion evidence.  Rather, the ALJ noted that musculoskeletal and extremity exams were within normal limits in September 2009 and May 2010,[19] and most recently in June 2011.  (R. 24).  Plaintiff ignores that.  As for the use of a CAM walker, Dr. Finn's notes reflect Plaintiff was not fit for one until December 23, 2009, one week prior to Plaintiff's date last insured, and that it was for "long walks."  (R. 336-37).

In light of the ALJ's consideration of the records from Drs. Bryant and Finn, even though not by name or treating doctor status, I conclude that the ALJ credited their opinions and thus was not required to provide reasons for discounting the same.[20]  Finally, I note that neither Dr. Bryant nor Dr. Finn proffered an opinion on Plaintiff's functional capacity.  For Plaintiff to suggest or urge otherwise is somewhat disingenuous.[21]

### *Eleventh Circuit Pain Standard and Witness Credibility*

Plaintiff's fourth and ninth claims relate to the ALJ's witness credibility determinations and are addressed together.  By his fourth claim, Plaintiff summarily argues

---

[19]These findings were noted by Plaintiff's treating family doctor, David J. Hobbs, M.D. (R. 408-09), as well as by Dr. Bryant (R. 322, 433, 534).

[20]It is worth noting that Plaintiff testified at the administrative hearing that Dr. Bryant treated his prostate cancer and that Dr. Finn was his orthopedist.  *See* (R. 40-41).  It implicitly follows that the ALJ was aware of their treating doctor status.

[21]There are only two opinions commenting on Plaintiff's residual functional capacity. One is by a "single-decision maker."  (R. 496-503).  The other is by a non-examining state agency doctor.  (R. 532).  Both were of the opinion that Plaintiff could perform light exertional work with occasional postural limitations.

that because the ALJ found the "pain standard" was met in this case and the ALJ did not properly refute Plaintiff's testimony, Plaintiff's testimony must be taken as true as a matter of law.  (Doc. 10 at 6).  By his ninth claim, Plaintiff argues that the ALJ erred by disregarding the testimony of Plaintiff's mother on the basis that she is an interested party.  Because the ALJ did not properly refute her testimony as required by *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990), Plaintiff contends his mother's testimony must be taken as true as well. (Doc. 10 at 11).

The Commissioner counters that although the ALJ found that the first two prongs of the "pain standard" were met, Plaintiff improperly concludes that his testimony and diagnoses alone confirm the severity of the alleged symptoms.  In her view, the ALJ thoroughly discussed and weighed the evidence in assessing Plaintiff's subjective complaints of pain and other symptoms.  As such, the Commissioner urges that the ALJ properly relied upon the medical evidence and Plaintiff's daily activities in concluding that Plaintiff's subjective complaints were credible only to the extent they were not inconsistent with the ability to perform light work with occasional postural limitations.  (Doc. 15 at 11-16).  With respect to the questionnaire responses provided by Plaintiff's mother, the Commissioner argues the ALJ appropriately accorded them little weight because the responses were similar to Plaintiff's testimony.  The Commissioner notes that, contrary to Plaintiff's urging, the ALJ may consider the nature and extent of a lay witness's relationship to a claimant and did so here.  In any event, the ALJ did not discount her opinion solely on the basis that she was a disinterested witness and the other reasons provided by the ALJ adequately support according the opinion little weight.  (Doc. 15 at 16-17).

In this Circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Where such showing is made, the Regulations dictate that the ALJ then evaluate the intensity and persistence of the symptoms to determine how such limit the claimants capacity for work.[22] 20 C.F.R. § 404.1529(c). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1561-62). Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole." *McCruter*, 791 F.2d at 1548. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

As an initial matter, I note that Plaintiff does not challenge the ALJ's consideration of any particular subjective complaint or resulting limitation. That said, Plaintiff testified to less bladder control, needing to urinate every hour, headaches and drowsiness from

---

[22]Relevant factors in this consideration include the objective medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history. 20 C.F.R. § 404.1529(c).

medication resulting in the need to lie down for two hours a day, the ability to stand comfortably for half an hour and walk half a block, right ankle instability and an inability to drive while wearing the CAM walker, difficulty walking on uneven ground, difficulty stooping, difficulty grasping items due to left hand shakes/tremors, dropping things on a daily basis, an inability to lift a gallon of milk due to shoulder and wrist pain, and frequent problems with concentration and memory.  (R. 40-48).  Plaintiff's mother, Lureen Johnson, completed a questionnaire captioned "Function Report - Adult Third Party" on October 8, 2010.  She reported that Plaintiff exercised and fixed lunch/dinner on a daily basis but it takes him a long time; did laundry and grocery shopping about two hours a week; has difficulty sleeping due to neck pain and the pain affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands; could walk a short distance before needing to rest for a few minutes; has worn a brace since 2009; and had no problems with attention, following instructions, getting along with authority figures, personal care, or handling money, stress, or changes in routine.  (R. 149-56).

　　　　After discussing the applicable regulations and rulings and recounting Plaintiff's testimony, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity for light work with occasional postural limitations.  (R. 23-34).  Regarding Mrs. Johnson's opinion testimony in the questionnaire, the ALJ gave it little weight because she was not a disinterested person

On consideration of the decision and the administrative record, I conclude that Plaintiff is not entitled to relief on these claims.[23]  Review of the decision reflects that the ALJ correctly applied this circuit's "pain standard."[24]  While the credibility analysis may have been articulated more clearly, review of the decision shows the ALJ provided several reasons for discounting Plaintiff's (and his mother's) allegations of disabling symptoms and resulting limitations.  In particular, the ALJ found that Plaintiff's credibility was weakened by inconsistencies between his allegations and the medical evidence, Plaintiff's allegations of daily activities, and because there are no opinions of record indicating that Plaintiff is more restricted than he determined.  (R. 24-25).  In support, the ALJ noted that while Plaintiff had chronic back pain and degenerative disc disease during the pertinent period, musculoskeletal, extremity, and neurological exams were within normal limits in September 2009 and May 2010, and in June 2011 Plaintiff had no joint or muscle complaints and exams were again within normal limits.  (R. 24).  The ALJ also noted that while Plaintiff was developing instability of the ankle and findings on MRI revealed tibial tendinitis and a ganglion cyst, physical therapy notes indicated Plaintiff's prognosis was good.  (R. 24-25).  My review of the medical record demonstrates those findings are supported by substantial evidence.[25]  In

---

[23]At the outset, the claims are subject to being disregarded for insufficient development.

[24]Proper application of the regulatory standard will satisfy this circuit's pain standard. *See Wilson,* 284 F.3d at 1225-26.

[25]For instance, Dr. Hobbs, Plaintiff's treating family doctor, assessed chronic back pain and degenerative joint disease in September 2009 but indicated that musculoskeletal, extremity, and neurological exams were all within normal limits.  (R. 408-09).  On November 3, 2009, Dr. Finn noted the posterior tibial tendinitis and ganglion cyst on MRI but noted Plaintiff would be treated symptomatically in physical therapy.  (R. 338).  One month later,

addition to those reasons, the ALJ noted that Plaintiff admitted that he cares for his personal needs, does some housework, prepares simple meals, drives, shops, reads, listens to music, and watches movies, and his mother made similar statements.  (R. 24).  Plaintiff is correct that a claimant's admission that he participates in daily activities for short durations does not necessarily disqualify him from a disability.  *See Lewis*, 125 F.3d at 1441.  However, it is not inappropriate for an ALJ to consider a claimant's daily activities when evaluating his subjective symptoms.  *See* 20 C.F.R. § 404.1529(c)(3)(I).  Thus, it was not improper here, where the ALJ did not rely solely or primarily on such reasons for discounting the credibility of Plaintiff's testimony.  Finally, essentially for the same reasons, I find that the ALJ provided adequate reasons for discounting the questionnaire responses by Plaintiff's mother which were inconsistent with disabling limitations.  *See Osborn v. Barnhart,* 194 Fed. App'x 654, 666 (11th Cir. 2006) (citing *Tieniber*, 720 F.2d at 1254-55).

---

Dr. Finn reported that Plaintiff's ankle was doing better, his tendinitis was treated with physical therapy, and a CAM walker was being added for "long walks." (R. 337).  On December 18, 2009, Plaintiff discontinued therapy because he had a busy schedule, insurance and financial issues, and was feeling much better.  (R. 399).  It is worth noting that it was on December 23, 2009, approximately one week before his insured status expired, that Plaintiff was fitted with a CAM walker.  (R. 336-37).  Thereafter, in January and April 2010, Dr. Hobbs noted findings similar to those in September 2009.  (R. 402-04).  Similarly, in May and November 2009 and May 2010, Dr. Bryant noted Plaintiff did not have tenderness in the back and had no complaints of joint or muscle pain.  (R. 322, 433, 438).  With respect to Plaintiff's prostate cancer, Dr. Bryant noted in May 2009 that Plaintiff reported no urinary incontinence and there was no induration suggestion of recurrent local disease.  (R. 438).  In November 2009 and May 2010, Plaintiff reported to Dr. Bryant that he did not have urinary incontinence except of the stress type, and the doctor again noted there was no induration suggestive of recurrent local disease.  (R. 321-22, 432-33).  Laboratory results post-surgery likewise were not indicative of recurrence.  (R. 458-64).  Lastly, on review of these records, the nonexamining, state agency doctor opined in February 2011 that he concurred with an earlier RFC assessment for light work with occasional postural limitations.  (R. 532).

*Step Three:  Listed Impairment*

By his seventh claim, Plaintiff summarily argues that he met listing 13.23 for prostate cancer because his doctor stated that he had such prostate cancer despite removing the prostate.  Moreover, given his doctor's continued diagnosis of prostate cancer after surgery, Plaintiff contends any finding of improvement is incorrect.  (Doc. 10 at 10).

The Commissioner counters that Plaintiff fails to explain how his impairment satisfied the listing criteria for prostate cancer and thus his claim fails.  The Commissioner also urges that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet or equal a listing.  (Doc. 15 at 7-9).

The Listing of Impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience.  Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment.  *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).  However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled.  *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987); *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986).

In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing.  Where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency.  *Bell*, 796 F.2d at 1353.  Mere diagnosis of a listed

33

impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224.

At issue here is listing 13.24.[26] That listing addresses prostate gland carcinoma and requires it to be (A) progressive or recurrent despite initial hormonal intervention,[27] or (B) with metastases to internal organs. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 13.24. The ALJ stated he had considered all of Plaintiff's impairments individually and in combination but could not find evidence that the combined clinical findings from the impairments reached the level of severity contemplated in the listings. Thus, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[28] (R. 22).

---

[26]As recognized by the Commissioner, the listing which Plaintiff cites (13.23) pertains to cancers of the female genital tract.

[27]"Hormone therapy, also known as androgen-deprivation therapy or ADT, is designed to stop testosterone from being released or to prevent it from acting on the prostate cells. Although hormone therapy plays an important role in men with advancing prostate cancer, it is increasingly being used before, during, or after local treatment as well." *See* http://www.pcf.org/site/c.leJRIROrEpH/b.5814015/k.91CD/Hormone_Therapy.htm (last visited Dec. 29, 2014).

[28]The ALJ did not specifically address whether Plaintiff's status prostate cancer satisfied listing 13.24. However, such consideration is implicit in light of the ALJ's above finding. *See Hutchinson v. Bowen*, 787 F.2d 1461,1463 (11th Cir. 1986) (providing that an ALJ need not recite the evidence relied upon in finding that a claimant does not meet a listing because an implicit finding suffices). Thus, the ALJ's implied finding in this case is sufficient. *See id.*

Plaintiff wholly fails to demonstrate that his prostate cancer met the requirements of listing 13.24 because he presents no findings, specific or otherwise, that meets either (A) or (B) under the listing.  Although Plaintiff underwent a radical prostatectomy in 2008 for localized prostate cancer, he fails to explain how the impairment satisfied the specific criteria under the listing.  Of note, Plaintiff does not point to any evidence that his cancer was progressive or recurrent despite initial hormonal intervention.  There is no indication in the administrative record that Plaintiff's prostate cancer progressed or recurred or that Plaintiff underwent any type of hormonal intervention.  Nor does Plaintiff point to evidence demonstrating that the prostate cancer metastasized to internal organs.[29]  Rather, Plaintiff summarily contends that the listing is met because Dr. Bryant "continually stated that he had such cancer" even after the prostate was removed.  Without more, that bald assertion simply fails to establish either prong of listing 13.24.  *See Carnes*, 936 F.2d at 1218.  Likewise, Plaintiff wholly fails to demonstrate a medical equivalency under listing 13.24.  Contrary to the required showing, Plaintiff presents no evidence describing how the impairment has such an equivalency.  Because Plaintiff failed to do so, he has not met his burden of proof and may not prevail on this claim.[30]  *See Carnes*, 936 F.2d at 1218; *Wilkinson*, 847 F.2d at 662.

---

[29]To the contrary, follow up visits in November 2008 and November 2009 reveal normal exams aside from some stress type incontinence.  (R. 321-23, 330-31).  His doctor noted there was no induration suggestive of recurrent local disease.  (R. 322).

[30]These claims are also subject to dismissal pursuant to this Court's Scheduling Order dated March 18, 2014.  Therein, Plaintiff was instructed to:

> identify with particularity the discrete grounds upon which the administrative decision is being challenged. . . . [and that] all discrete challenges must be supported by specific citation to the

### *Social Security Ruling 96-8p*

Similar to his credibility argument, in his fifth claim Plaintiff faults the ALJ for not mentioning the standard utilized by the Social Security Administration ("SSA") in determining an individual's RFC, namely, that set forth in SSR 96-8p.  In particular, Plaintiff argues the ALJ erred by using his own standard instead of that dictated by SSR 96-8p as evidenced by the ALJ's statement that "although the allegations of Mr. Johnson are indicative of severe impairments, they do not show that he is totally disabled," and finding that Plaintiff "could not be disabled in that his daily activities are inconsistent with someone who would have a disabling condition."  (Doc. 10 at 7).  According to Plaintiff, the SSA's standard does not require that a claimant show he is bedridden, unable to perform some daily activities, or completely incapacitated.  (Doc. 10 at 6-8).

The Commissioner counters that the ALJ clearly understood the sequential evaluation process and his decision reflects that he did not apply a standard requiring Plaintiff to show he was bedridden in order to be disabled.  She notes that the ALJ impliedly found that Plaintiff could work eight hours a day, five days per week, by finding Plaintiff could perform a reduced range of light work.  She notes further that the ALJ did not find or suggest that Plaintiff's daily activities alone rose to that level.  (Doc. 15 at 16).

---

pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing legal authority that supports each challenge.  Any contention for which these requirements are not met is subject to being disregarded for insufficient development and denied without further consideration.

(Doc. 7 at 1-2) (citations omitted).  Here, Plaintiff has failed to do so.

I find no error in this regard.  Social Security Ruling 96-8p addresses the SSA's policies and policy interpretations regarding the assessment of RFC in initial claims for disability benefits.  The portion on which Plaintiff relies states, in pertinent part, that:

> Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 WL 374184, at *1.  Here, contrary to Plaintiff's assertion, the ALJ recognized that RFC is an individual's ability to do physical and mental work activities on a sustained basis and specifically referenced SSR 96-8p.  (R. 21).  Further, despite the ALJ's statements on which Plaintiff relies in urging the ALJ applied an incorrect standard, the decision simply does not support his assertion that the ALJ required Plaintiff to demonstrate an excess showing of "complete disability."  Rather, the decision reveals that the ALJ both recognized and applied the correct standard.  Plaintiff still bears the burden of proving disability at this step and, aside from his testimony and that of his mother's which the ALJ adequately discounted, there is no credible evidence contradicting the state agency doctor's RFC opinion on which the ALJ relied.

Finally, I find no merit in Plaintiff's third and eighth claim.  Here, the ALJ found Plaintiff capable of light work.  By his third claim, he urges he should of been found capable of only sedentary work, and upon his claimed limitations, found disabled as testified to by the VE.  On the eighth claim, he urges the ALJ should have determined that he met the sedentary grid rules 202.12 or 201.14.  However, he simply fails to demonstrate that the ALJ's RFC finding for light work was not supported by substantial evidence or that he could do no more

37

than sedentary work.[31]  In the end, the VE's testimony about sedentary jobs was of no import;[32] nor were the sedentary grid rules.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration at step four and step five of the evaluation process dictated by the regulations is not supported by substantial evidence or in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
20th day of February 2015.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[31]In support of this argument, Plaintiff claims that he should have been limited to sedentary exertional work, not light work, in light of Dr. Finn's notation of ankle instability and the requirement of wearing a CAM walker or boot and Plaintiff's testimony that he is unable to walk without a CAM walker or boot and he cannot drive when he wears one.  But the doctor never stated that he could not walk without it and only fitted him with the CAM walker for use on long walks.  As the Commissioner points out, Plaintiff thereafter responded well to physical therapy for his tendinitis and ganglion cyst and he discontinued it because he felt better.  And, it is again worth noting that Plaintiff wasn't fitted with the boot until one week before his date last insured.

[32]To the extent that he complains that there were no questions of the VE assuming the capacity for light exertional work, one wonders why his counsel who continues to represent him asked no questions at all of the VE.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record